GEORGE E. FISHER, APPELLANT, *v.* GOODRICH H. BUSH, RESPONDENT.

*Agreement not to sell stock — nor to vote by proxy — when void as against public policy — such an agreement must be based on a real and special consideration.*

The complaint alleged that the plaintiff, the defendant and eight other persons, signed the following written sealed instrument: "For value received from and paid to each other, we, the undersigned, stockholders of the GeneseeValley Canal Railroad Company, mutually agreed with the other and to all, that we will not sell, assign, set over, pledge or give power of attorney to vote, or agree to sell, assign, transfer, set over, pledge or give power of attorney to vote, in any way, shape or manner, the stock which we respectively and individually own, hold or possess in said company without the concurrent consent of all signers to this instrument. * * * This agreement is made for mutual protection and to prevent the sale of the company's franchise by a majority of the members of the present board of directors who are, and who represent, a minority of the shares of the capital stock of this company."

*Held,* that the agreement was void because:

*First.* It was in restraint of trade and against public policy.

*Second.* Because the clause providing that none of the signers should vote by proxy was a pernicious and unlawful provision.

*Third.* Because it was not founded upon an adequate and sufficient consideration. Agreements of this character must be supported by a real and special consideration.

*Havemeyer* v. *Havemeyer* (45 Supr. Ct. R., 464; affirmed, 86 N. Y., 618), distinguished.

APPEAL from a judgment sustaining the defendant's demurrer to the first alleged cause of action set out in the complaint.

The plaintiff and defendant, with eight others, made and signed an agreement in writing, under their hands and seals, of which the following is a copy: For value received from and paid to each other, we, the undersigned stockholders of the Genesee Valley Canal Railroad Company, mutually agree with the other, and to all, that we will not sell, assign, set over, pledge or give power of attorney to vote, or agree to sell, assign, transfer, set over, pledge or give power of attorney to vote in any way, shape or manner, the stock which we respectively and individually own, hold or possess in said company, without the concurrent consent of all signers to this instrument. And either of the parties who shall be guilty of a breach of this agreement, shall be liable to each of the other parties

hereto for the full value of the stock held by each respectively, which full value shall be deemed the liquidated damages and not as a penalty.

This agreement is made for mutual protection and to prevent the sale of the company's franchise by a majority of the members of the present board of directors, who are, and who represent, a minority of the shares of the capital stock of this company.

The complaint alleges that the defendant, without consent of the plaintiff and without the concurrent consent of all the other signers to the agreement, did sell and assign his stock to one Jesse Seligman. The complaint further alleges, that the value of the plaintiff's stock at the time of such sale was upwards of $80,000, and that his damages in consequence of such sale amounts to the sum of $80,000, and upwards. That among the other damages sustained by the plaintiff by reason of the breach of the agreement and the sale of the defendant's stock, the management of the franchise and property of the company, which, until that time, had been controlled by the plaintiff and his said associates, and but for said breach would have remained under their control, was wholly lost to them, and thereby and thereafter the management of said franchise and property passed to the control of that party in the directorship of said company, who, until said breach represented only a minority of its stock.

*F. L. & J. E. Durand,* for the appellant.

*William H. Shepard,* for the respondent.

Barker, J. :

The learned judge at Special Term, in sustaining the demurrer placed his decision on the legal proposition that the agreement was void in law, and said in his opinion, that, "the agreement was void on the face of it. The right of alienation is an incident of the property represented by the stock, and any restraint placed thereon by a contract which has no other consideration to uphold it than the mutual promise of the parties is contrary to public policy, and cannot be recognized by the court."

We concur in the result and the legal proposition stated as applicable to the case. This agreement is of the class of contracts held to be void because they are in restraint of trade and against public

policy. It contains an absolute and separate promise on the part of each of the covenanters that he will not, at any time or place, sell his share of stock, unless assented to by all the other partners to the agreement. If this agreement was valid when executed, the restraint placed by each owner upon the right of sale must be in force now, and will remain so for an indefinite period, if one or more of the parties thereto refuse to join in its abrogation. By its terms it is brought within the rule which condemns as illegal all contracts in restraint of trade generally. The purpose of the parties in making the same, as stated on the face of the agreement, is not such and so limited as to time and place as not to be condemned as against public policy. Each shareholder remained the sole owner of his shares, and neither acquired any interest in the shares owned by his associates, and if any advantage was derived by withdrawing the shares from the market, it was not to be enjoyed in common by all the parties to the agreement. In no sense whatever did they become tenants in common or interested as co-partners in the shares represented in the agreement. The covenant is executory in its character, and is a mere naked promise, on the part of such of the several owners that he will not sell the same, nor appoint an agent to represent him in selecting a board of directors. Nor is the agreement in the nature of a condition attached to any actual sale or transaction connected with the stock owned by the defendant, or other shares which he has sold to either of his associates. The owner of property may withdraw it from the market as long as he deems it for his interest to do so, and if these parties and their associates were the promoters of this corporation, or owned these shares in common, or as co-partners, then doubtless they could have entered into a valid agreement, regulating a sale of the same and requiring the owners to hold them from market for a reasonable and definite period of time, and thus forbidding a sale by either of his interest to one, against whom his associates might have a reasonable objection. (*Moffatt* v. *Farquhar*, 7 Ch. Div., 591, reported in 23 Moak s Eng. R., 731.) A stipulation of that character would not be illegal as against public policy, as it would be simply a provision, assented to by all, that the new comer into the business transaction should be with the approval of the other joint owners. The right of transfer is a right of property, and if another has the arbitrary power to forbid a

transfer of property by the owner that amounts to annihilation of property. A man may have embarked too much in becoming a member of a corporation, and in case of an emergency he may be required to sell his shares fairly in the market, and if other owners of the same class of shares have the power of vetoing the transfer because they conjecture there is some collateral object to be gained by forbidding the sale, the value of the property is diminished and its market value is gone; and for that reason, where no such circumstances, as we have mentioned, exist, then an agreement of the character of the one before us is held illegal and void from the wisest consideration of public policy. It is well known, and so much so that no court can close its eyes to the fact, that shares in stock are dealt in by the trading and mercantile community on a large scale, and passed from hand to hand the same as money at their accepted market value, and a voluntary agreement disconnected from any actual transaction in the same class of property has the effect, as every one must know, of restraining the operations of trade and commerce, and deprives the owner of the means of paying his debts or securing credit with merchants and bankers.

The clause that neither will vote by proxy in the choice of a board of directors is pernicious, and is well calculated to concentrate in the hands of a few shareholders the power of selecting the executive and managing officers of the corporation, and deprives the owner of shares of one of the attributes of ownership, that is, of selecting agents and attorneys to counsel and aid him in the prudent and intelligent management of his property. If so disposed either one of these covenanters could suppress the voice of every one of his co-covenanters, and give to shareholders not represented in this contract the complete control of the corporate franchise. This term of the contract is so connected and interlaced with the one not to sell, that we are inclined to think the entire contract must fall, if only this one promise is void and inoperative. The arrangement between these parties is not to act in concert in the choice of a board of management, nor is unity of action in that respect secured by the stipulations of the agreement, for the reason that when the shareholders come together to choose the managers and agents of the corporation each one is free to exercise his own judgment, unrestrained by any term of the

agreement, so that an observance of the defendant's covenants in every respect would not have prevented a sale of the company's franchise by the then board of directors, which was one of the objects sought to be accomplished by the agreement as stated therein; and if he had remained the owner it would not have prevented, as far as we can see, the damages which the plaintiff alleges he has sustained by reason of the transfer of the management of the franchise and property of the company to another combination of parties represented in the board of directors as alleged in the complaint. Nor is it manifest to the common mind how an agreement between two or more owners of the same kind of property that neither will, for an indefinite period, sell the same in the market without the consent of both or all will operate for the mutual advantage and protection of such owners. On the contrary, the pernicious influence of such agreement is obvious, and is one of the methods by which in former times monopolies were sought to be obtained in certain classes of business. Under this agreement either party to the combination is afforded an opportunity to plan and carry out schemes of speculation in the shares of stock not represented in the contract, giving each member an advantage over the general public who are ignorant of the circumstance that a portion of the shares in the corporation are to be kept from the market so long as such parties may dictate that policy. There is in this arrangement no provision that none of the associates shall not deal in other shares; and if he does, that all shall share in the profits derived therefrom. (*Havemeyer* v. *Havemeyer*, 43 N. Y. Sup. Ct. R., 506; affirmed in 86 N. Y., 618.)

But if we could hold the aim and purpose of the agreement to be proper and legal no sufficient consideration is averred in the complaint to support the defendant's promise. Mutual promises alone do not constitute a good and sufficient consideration in contracts of this character, and being under seal does not change the rule. It is essential to the validity of such agreements that there should be a special consideration paid to the promiser by the promisee. (2 Pars. on Cont., 746, 753, note z, on page 748; *Ross* v. *Sadgbeer*, 21 Wend., 166.)

In *Collins* v. *Locke* (4 App. Cases, 674), a privy council adjudication made in 1879, and reported in 33 Moak, 448, it was held that

agreements in restraint of trade will not be upheld unless they are made upon a real and a *bona fide* consideration, and in *Morris Run Coal Co.* v. *Barclay Coal Co.* (68 Pa., 173), the rule was laid down that the consideration must be actual and adequate and not colorable. The defendant, therefore, cannot be held on his covenant for the reason that it is *nudum pactum.* The appellant's counsel cites and relies on *Havemeyer* v. *Havemeyer* (45 N. Y. Supr. Ct. R., 464; affirmed in the Ct. of App., 86 N. Y., 618) as an authority in support of his position. The question of the necessity of an actual consideration to support such agreements was not up and considered in that case. Upon the general question as to the validity of such contracts, and when they will be confirmed as valid and obligatory, we are unable to discover that any rule of law was affirmed that is applicable to this case, or hostile to our position condemning the agreement before us as void, for the reason that the same is an unreasonable restraint upon the property rights of the defendant. From the report of that case (as found in 43 N. Y., Supr. Ct. R., 506), it would seem that the parties had " combined " their shares so that all of them would be interested in the shares mentioned in the agreement.

Judgment affirmed, with costs, and leave given to the plaintiff to amend his complaint within twenty days on payment of costs, and if costs are not paid and complaint amended judgment absolute for the defendant.

HAIGHT, BRADLEY and CORLETT, JJ., concurred.

Judgment affirmed, with costs of the demurrer on this appeal, with leave to the plaintiff to amend complaint within twenty days on payment of the costs.